# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

_____

Richard Ellison,
      Petitioner,


      vs.                             Case No. 1:07cv528
                                          (Dlott, J.; Black, M.J.)


Warden, London Correctional
Institution,
      Respondent.


_____

## REPORT AND RECOMMENDATION
_____


      Petitioner, a prisoner in state custody at the London Correctional Institution in London, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition (Doc. 1), respondent's return of writ with exhibits (Doc. 10), and petitioner's "traverse" in reply to the return of writ with exhibits (Doc. 17).


## Procedural Background

      On October 20, 2004, the Hamilton County, Ohio, grand jury issued a six-count indictment charging petitioner with one count of aggravated burglary in violation of Ohio Rev. Code § 2911.11(A)(1);  two counts of kidnapping in violation of Ohio Rev. Code § 2905.01(A)(3); and two counts of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1).  (Doc. 10, Ex. 1).  The charges stemmed from the following

incident, as found by the Ohio Court of Appeals, First Appellate District, on direct
appeal:[1]

> On October 10, 2004, Ellison appeared at his mother and stepfather's
> house, entering through an unlocked garage.  After waiting three hours
> for them to come home, Ellison confronted his parents in the living room
> with duct tape, two pairs of handcuffs, a hammer, and a change of
> clothing.  Ellison had also disconnected the phone.
>
> Ellison, 55 years old at the time and a published author, claimed that he
> wanted to talk to his parents about long-standing family problems.
> Ellison's mother, stepfather, and sister had all been concerned for some
> time about Ellison's mental stability.  Ellison stated that he went to see
> his parents that day "to stand up to what I believed to be some measure of
> corruption within the family leadership."
>
> Ellison's mother and stepfather initially agreed to talk to him, but then his
> stepfather attempted to leave the house.  Ellison prevented his stepfather
> from leaving, injuring him in the process.  A little later, Ellison's mother
> attempted to call 911, but Ellison grabbed the phone from her.
>
> After talking for three hours, Ellison left and went home.  His parents
> called the police, who arrested Ellison later that night.

(*Id.,* Ex. 18, p. 2).

Petitioner initially entered a plea of not guilty by reason of insanity.  (*Id.,* Ex.
2).  He was referred to Twin Valley Behavioral Healthcare for psychological

evaluation on a "Suggestion of Incompetence" filed pursuant to Ohio Rev. Code
§ 2945.37, *et seq.*  (*See id.,* Ex. 3 ).  Upon review of the written psychological

---

[1]  28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for
a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be presumed correct" unless
petitioner rebuts the presumption by "clear and convincing evidence."  Petitioner has neither
cited nor presented any evidence to rebut the Ohio Court of Appeals' factual findings quoted
herein.  Therefore, he has not shown that such findings are erroneous.

evaluation report that was submitted, the trial court issued an order on March 15, 2005 finding petitioner "capable of understanding the nature and objective of the proceedings against him[] and of presently assisting in his[] defense" and, therefore, "competent for the purpose of sentencing." (*Id.*).

On May 16, 2005, petitioner entered a guilty plea to the aggravated burglary charge, one of the kidnapping charges and to a reduced charge of abduction, in exchange for the dismissal of the remaining charges. (*See id.,* Exs. 4, 33). At the plea hearing held the same date, the trial judge explained on the record before accepting petitioner's plea that he would be imposing a "sentence anywhere from zero up to six years," which was dependent on the results of the pre-sentence investigation and clinic report, and that petitioner could be subjected to consecutive sentences. (*Id.,* Ex. 33, Tr. 10-11). Petitioner stated that he understood, but sought "clarification" to ensure that the aggregate sentence would not exceed six years. (*Id.,* Tr. 11). The trial judge reassured petitioner that he was not "going to break [his] promise" to impose a sentence that would not exceed six years, but that he could order the sentences for each offense to run consecutively. (*Id.,* Tr. 12). Petitioner stated in response that he understood. (*Id.*).

At the close of the hearing, after accepting petitioner's guilty plea, the trial court set the matter for pre-sentence investigation "and an updated clinic evaluation with advisability of treatment." (*Id.,* Tr. 25). On July 5, 2005, prior to sentencing, petitioner's trial counsel filed a motion on petitioner's behalf to withdraw the guilty plea; in the motion, counsel stated: "While awaiting sentencing, Mr. Ellison decided his plea was hastily made and was not in his best interest." (*Id.,* Ex. 5).

On July 11, 2005, a hearing was held, where the court heard arguments on both the motion to withdraw plea and a *pro se* motion filed by petitioner seeking a remedy for ineffective assistance of counsel. (*Id.,* Ex. 34). The court denied both motions and proceeded to sentence petitioner to terms of imprisonment totaling six (6) years as follows: consecutive three (3) year prison terms for the aggravated burglary and kidnapping offenses and a concurrent five (5) year prison term for the abduction offense. (*See id.,* Exs. 6-7; Ex. 34, Tr. 48-52, 52-57, 78).

With the assistance of new counsel, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District. (*Id.,* Ex. 8). In the appellate brief filed by counsel on December 1, 2005, the following assignments of error were presented:

3

1. The trial court erred to the prejudice of the defendant-appellant by denying his motion to withdraw his guilty plea.

2. The defendant was denied effective assistance of counsel.

3. The court erred by ignoring the defendant's protestations of his lack of understanding the proceedings and charges against him, thus making the plea involuntary.

4. The trial court erred in sentencing the defendant to allied offenses of similar import.

(*Id.,* Ex. 9).

Thereafter, in a letter addressed to his appellate counsel dated December 19, 2005, petitioner mentioned "sentencing concerns" that he would like raised on appeal. (*See id.,* Ex. 11, attachment; *see also* Doc. 1, Memorandum In Support Of Petition, Ex. H). By letter dated December 21, 2005, counsel responded that he had already filed an appellate brief on petitioner's behalf raising "four issues in good faith" based on the record,  and that if petitioner "wished to file a supplemental brief [him]self, please feel free to do so with the Court."  (Doc. 10, Ex. 11, attachment; *see also* Doc. 1, Memorandum In Support Of Petition, Ex. I).

Petitioner filed a motion for leave to file a supplemental brief on February 10, 2006, requesting in the supplemental brief that the following claims be added as assignments of error:

1. The trial court erred when it sentenced defendant to more than a minimum sentence.

2. The trial court erred when it sentenced defendant to consecutive sentences rather than concurrent sentences.

(Doc. 10, Exs. 11-12).  The State filed a supplemental brief responding to the additional claims.  (*Id.,* Ex. 13).  However, on March 1, 2006, the Ohio Court of Appeals overruled petitioner's motion for leave to file a supplemental brief, and *sua sponte* struck the supplemental briefs filed by petitioner and the State from the record.

(*Id.,* Ex. 14).[2]

In a Decision and Judgment Entry filed May 20, 2006, the Ohio Court of Appeals overruled the four assignments of error raised in counsel's appellate brief and affirmed the trial court's judgment on direct appeal.  (*Id.,* Ex. 18).  Petitioner pursued two avenues of relief after this decision was issued.

First, on July 31, 2006, petitioner filed a *pro se* application for reopening of the appeal pursuant to Ohio R. App. P. 26(B), claiming that his appellate counsel was ineffective in failing to comply with petitioner's "repeated requests" to present an assignment of error challenging the trial court's imposition of non-minimum and consecutive prison terms under *Blakely v. Washington,* 542 U.S. 296 (2004), and *United States v. Booker,* 543 U.S. 220 (2005).  (*Id.,* Ex. 26).  On September 21, 2006, the Ohio Court of Appeals denied petitioner's reopening application on the ground that petitioner's claim could have been raised in an appeal to the Supreme Court of Ohio and thus was barred from review under the doctrine of *res judicata*. (*Id.,* Ex. 28). Petitioner apparently did not attempt to appeal this decision to the Supreme Court of Ohio.  (*See id.,* Brief, p. 6 & Ex. 32).

Second, on August 1, 2006, petitioner filed a *pro se* notice of appeal and motion for leave to file a delayed appeal to the Supreme Court of Ohio from the Ohio Court of Appeals' May 20, 2006 direct appeal decision.  (*Id.,* Exs. 19-20).  The Supreme Court of Ohio granted the motion for delayed appeal and ordered petitioner to file a memorandum in support of jurisdiction.  (*Id.,* Ex. 21).  In the memorandum in support of jurisdiction that petitioner subsequently filed, petitioner asserted claims in the first two propositions of law challenging the imposition of non-minimum, consecutive sentences under *Blakely* and *Booker*; he also alleged in a third proposition of law that his appellate counsel made "numerous serious errors" in handling the appeal, "including failing to raise a meritorious sentencing issue."  (*Id.,* Ex. 22).

On January 24, 2007, the Supreme Court of Ohio denied leave to appeal and dismissed the appeal "as not involving any substantial constitutional question."  (*Id.,* Ex. 23).  Petitioner filed a motion for reconsideration, which was denied without opinion on March 14, 2007.  (*Id.,* Exs. 24-25).

Petitioner commenced the instant federal habeas corpus action in July 2007. (Doc. 1).  In the petition, petitioner alleges three grounds for relief:

---

[2]  Petitioner appealed this decision to the Supreme Court of Ohio, which summarily dismissed the appeal "as not involving any substantial constitutional question" in an Entry filed June 21, 2006.  (*See* Doc. 10, Exs. 15-17).

**Ground One:**  Consistent with the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and pursuant to Ohio statutory requirements and the holdings in *Blakely* . . ., *Booker* . . ., and [an Ohio Court of Appeals, First Appellate District, case from 2005,] trial courts did not at the time of petitioner's sentencing have authority to impose a non[-]minimum sentence against the petitioner, a first-time offender.

**Ground Two:**  Consistent with the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and pursuant to Ohio statutory requirements and the holdings in recent United States Supreme Court cases and Ohio cases, the trial court did not at the time of petitioner's sentencing have the authority to impose consecutive sentences against the petitioner, a first-time offender.

**Ground Three:**  When appellate counsel makes numerous and substantial errors in handling a criminal appellant's direct appeal, including failing to raise meritorious sentencing issues that were requested by the client, counsel has provided constitutionally ineffective assistance of counsel, and defendant is entitled to a new direct appeal, with effective representation.

(Doc. 1, pp. 6-7, 8-9, 10).

In the return of writ, respondent contends that petitioner is not entitled to habeas relief based on the merits of the three claims alleged in the petition.  (Doc. 10, Brief, pp. 7-22).

In his "traverse" in reply to the return of writ, petitioner asserts the following new claims: (1) he is innocent of the charges; (2) his trial counsel was ineffective; (3) his guilty plea was not voluntarily or intelligently made; (4) the trial court's reasons for denying his motion to withdraw plea were legally insufficient; and (5) defects in the trial proceedings produced a fundamental miscarriage of justice.  (Doc. 17). Petitioner has not moved or otherwise been granted leave to amend the petition to include these claims as additional grounds for relief.  Therefore, only the three claims

actually alleged in the petition as grounds for relief will be considered herein.[3]

_____

[3] It is noted that even if the "new" claims had been alleged as grounds for relief, they would still be barred from review due to petitioner's procedural default in the state courts.

A petitioner must fairly present his claims for relief to the state courts for consideration before raising them in a federal habeas action. *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). The claims must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985). If the petitioner fails to fairly present his claims to the state courts, and no avenue of relief remains available to do so, his claims for federal habeas relief will be deemed "waived" unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

Here, petitioner has never raised any claim to the state courts challenging his conviction because it constitutes a "fundamental miscarriage of justice" or because he is innocent of the charges. Moreover, although his appellate counsel presented claims on direct appeal challenging the validity of his guilty plea, the trial court's denial of his motion to withdraw the plea, and trial counsel's effectiveness, petitioner did not raise those claims on further appeal to the Supreme Court of Ohio. Because petitioner thus failed to provide the state's highest court with the opportunity to correct these alleged errors, he has waived the "new" claims absent a showing of cause for his defaults and actual prejudice as a result of the alleged errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not provided any justification as "cause" for his procedural defaults in the state courts. He also has not shown that a "fundamental miscarriage of justice" will occur if the procedurally-defaulted claims are not considered on the merits. Under the "fundamental miscarriage of justice" exception to the waiver doctrine, petitioner must demonstrate that the alleged constitutional violations "probably resulted in the conviction of one who is actually innocent" of the offenses. *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *cf. Souter v. Jones,* 395 F.3d 577, 597-602 (6th Cir. 2005). To establish such a claim, petitioner "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" based on "new reliable evidence . . . that was not presented at trial." *Schlup,* 513 U.S. at 324, 327. The exception is "rare" and is to be applied only in the "extraordinary case," where the "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine the confidence in the result of the trial." *Id.* at 317, 321. No such showing has been made in this case.

## OPINION

### A. Petitioner Has Waived The *Blakely/Booker* Claims Alleged In Grounds One And Two And Has Not Shown, As Alleged In Ground Three, That Counsel's Ineffectiveness Constitutes "Cause" For His Default In The State Courts

In Grounds One and Two of the petition, petitioner contends that his sentence is unconstitutional under the Supreme Court's June 24, 2004 decision in *Blakely* and January 12, 2005 decision in *Booker*, as well as in light of an Ohio Court of Appeals, First Appellate District, decision– *State v. Montgomery*, 825 N.E.2d 250 (Ohio Ct. App. 1 Dist. 2005)–specifically holding certain provisions of Ohio's sentencing statute unconstitutional under *Blakely*.  (Doc. 1, pp. 6-7).  In Ground Three of the petition, petitioner also alleges in part that his appellate counsel was ineffective for failing to raise claims on direct appeal challenging petitioner's sentence based on *Blakely*, *Booker* and *Montgomery*.  (*See id.,* pp. 10-11).

Although respondent has not argued in the return of writ that the claims alleged in Grounds One and Two of the petition are barred from review on the basis of petitioner's procedural default in the state courts, the issue should be considered in this case.

"Procedural default is not a jurisdictional bar to review on the merits, and [the] court is not required to address the issue *sua sponte*."  *Howard v. Bouchard,* 405 F.3d 459, 476 (6th Cir. 2005), *cert. denied,* 546 U.S. 1100 (2006) (citing *Trest v. Cain,* 522 U.S. 87, 89 (1997)).  Although procedural default generally is considered an affirmative defense that "the State is 'obligated to raise' and 'preserv[e]' if it is not to 'lose the right to assert the defense thereafter,'" *Trest,* 522 U.S. at 89 (quoting *Gray v. Netherland,* 518 U.S. 152, 166 (1996)), the court may in its discretion raise the issue *sua sponte.  See, e.g., Lorraine v. Coyle,* 291 F.3d 416, 426 (6th Cir. 2002) (and cases cited therein), *cert. denied,* 538 U.S. 947 (2003); *Elzy v. United States,* 205 F.3d 882, 886 (6th Cir. 2000); *Hargrove v. Haviland,* No. 1:02cv703, 2005 WL 1379098, at *7 (S.D. Ohio June 8, 2005) (Spiegel, J.) (unpublished) ("it is clear that a district court may, if it so chooses, raise the existence of a procedural default *sua sponte* despite the state having not done so").

The Sixth Circuit has expressed its agreement with "several of our sister circuits that appellate courts should not embrace *sua sponte* raising of procedural default

8

issues as a matter of course," apparently out of concern that the petitioner should be afforded an opportunity to be heard on the matter before claims are dismissed on procedural default grounds. *See, e.g., Howard,* 405 F.3d at 476; *Flood v. Phillips,* 90 Fed.Appx. 108, 114-15 (6th Cir. Jan. 30, 2004) (not published in Federal Reporter); *cf. Lorraine,* 291 F.3d at 426 (holding that the district court did not abuse its discretion in *sua sponte* raising procedural default as an issue where the petitioner had the opportunity to respond).

Here, petitioner has had the opportunity to respond to the procedural default issue. Indeed, after the Ohio Court of Appeals struck his *pro se* brief raising claims challenging the imposition of non-minimum, consecutive sentences on direct appeal, petitioner sought to have the claims considered on the merits by arguing both in his reopening application and in his memorandum in support of jurisdiction on delayed appeal to the state supreme court that his appellate counsel was ineffective in failing to assert the claims as assignments of error as he had requested. Moreover, in the instant petition, petitioner has alleged as a separate ground for relief that his appellate counsel was ineffective in failing to raise the *Blakely/Booker* claims, which constitutes "cause" for his default of those claims in the state courts. In any event, petitioner has an additional opportunity to respond to the issue in any objections to this Report and Recommendation. *Cf. Medina v. Wolfe,* No. 2:06cv921, 2007 WL 2323381, at *7 (S.D. Ohio Aug. 9, 2007) (Kemp, M.J.) (Report & Recommendation) (unpublished), *adopted,* 2007 WL 2907521 (S.D. Ohio Oct. 3, 2007) (Holschuh, J.) (unpublished); *Butts v. Sheets,* No. 2:05cv994, 2006 WL 2612896, at *10 (S.D. Ohio Aug. 10, 2006) (King, M.J.) (Report & Recommendation) (unpublished), *adopted,* 2006 WL 2612976 (S.D. Ohio Oct. 12, 2006) (Smith, J.) (unpublished), *aff'd,* No. 06-4676, 2008 WL 2224802 (6th Cir. May 27, 2008) (unpublished).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). As noted above, *see supra* p. 7 n.3, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present a claim through the requisite levels of state appellate review to the state's highest court or commits some other procedural default relied on to preclude review of the merits of such claim by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue the claim in the state courts, his claim for habeas corpus relief is subject to dismissal with prejudice on the ground that it is waived.  *See O'Sullivan,* 526 U.S. at 847-848;  *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, petitioner has not had a claim considered by the state's highest court and he can no longer present the claim to the state courts, he has waived such claim for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner committed a procedural default with respect to the record-based *Blakely/Booker* claims alleged in Grounds One and Two of the petition because his appellate counsel did not assert the claims as assignments of error on direct appeal, and the state appellate court struck petitioner's *pro se* brief challenging the non-minimum, consecutive sentences that were imposed in this case.   (*See* Doc. 10, Exs. 9, 11-14).

Although petitioner presented the *Blakely/Booker* claims as propositions of law on further delayed appeal to the Supreme Court of Ohio (*see id.,* Ex. 22), the state supreme court lacked jurisdiction to entertain the issues that were not raised or considered on direct appeal.  *See* Ohio Const. art. IV, § 2(B)(2); *State v. Williams,* 364 N.E.2d 1364, 1367 (Ohio 1977) (and cases cited therein), *vacated on other grounds,* 438 U.S. 911 (1978); *State v. Phillips,* 272 N.E.2d 347, 352 (Ohio 1971); *State v. Jones,* 211 N.E.2d 198, 199 (Ohio 1965), *cert. denied,* 383 U.S. 918, 951 (1966); *see also Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982), *cert. denied,* 460 U.S. 1042 (1983).  Because petitioner thus did not provide the highest state court in Ohio with an opportunity to correct the alleged constitutional errors, he has procedurally defaulted the claims alleged in Grounds One and Two of the petition.  *See Leroy,* 757 F.2d at 99; *Rios v. Baker,* 51 F.3d 273 (table), No. 94-

3892, 1995 WL 118972, at **1 (6th Cir. Mar. 20, 1995) (unpublished); *Dixon v. Hudson,* No. 1:05cv2499, 2008 WL 540905, at *7 (N.D. Ohio Feb. 25, 2008) (unpublished); *see also Hughes v. Idaho State Bd. of Corr.,* 800 F.2d 905, 907-08 (9th Cir. 1986); *Nutall v. Greer,* 764 F.2d 462, 464 (7th Cir. 1985).

This Court, therefore, is barred from considering the claims alleged in Grounds One and Two of the petition unless petitioner shows cause for his default and actual prejudice as a result of the alleged errors, or demonstrates that failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not demonstrated a fundamental miscarriage of justice will occur if his claims challenging his aggregate six-year prison sentence are not considered by this Court. *See supra* p. 7 n.3. In addition, because there is no constitutional right to file a *pro se* supplementary brief in addition to the brief filed by counsel, the Ohio Court of Appeals' striking of petitioner's *pro se* brief did not constitute cause for excusing the default of issues raised in the *pro se* brief but not in the brief filed by petitioner's appellate counsel. *See, e.g., McMeans v. Brigano,* 228 F.3d 674, 684 (6th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001); *Bohm v. Burt,* No. 02-CV-70776-DT, 2003 WL 345948, at *7 (E.D. Mich. Jan. 14, 2003) (unpublished).[4]

Petitioner has alleged in Ground Three of the petition that his appellate counsel was ineffective in failing to assert the *Blakely/Booker* claims as assignments of error in the brief that was allowed on direct appeal. Appellate counsel's ineffectiveness may constitute "cause" for a procedural default which occurs, as here, in an appeal as of right to the Ohio Court of Appeals. *See Murray,* 477 U.S. at 488; *see also Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Burroughs v. Makowski,* 411 F.3d 665, 668 (6th Cir.) (*per curiam*), *cert. denied,* 546 U.S. 1017 (2005).

In order to establish such a claim, petitioner must demonstrate that his attorney on direct appeal made such serious errors that (1) he was not functioning as the

---

[4]  *See also Gore v. Crosby,* No. 3:03-cv-474-J-25, 2006 WL 4847609, at *32 (M.D. Fla. Jan. 31, 2006) (unpublished) (relying on *McMeans* and *Tarter v. Hury,* 646 F.2d 1010, 1014 (5th Cir. 1981), in rejecting the petitioner's contention that the striking of his *pro se* pleadings denied him access to the courts and constituted cause for his procedural default in collateral proceedings where he was represented by counsel), *aff'd,* 492 F.3d 1273 (11th Cir. 2007), *cert. denied,* 128 S.Ct. 1226 (2008).

"counsel" guaranteed by the Sixth Amendment; and (2) such deficient performance prejudiced the defense.  *See Strickland v. Washington,* 466 U.S. 668, 687 (1984).

Under the first prong of the *Strickland* test, petitioner must show that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id.* at 688.  Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct.  *Id.* at 689.  In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *Id.*

To satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the result of the direct appeal proceeding would have been different.  *See id.* at 694.  Petitioner has met his burden if he shows that the result of the appeal would "reasonably likely have been different absent the errors."  *Id.* at 695.

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance.  The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *Id.* at 697.

As an initial matter, petitioner contends that his appellate counsel was ineffective in failing to raise *Blakely/Booker* claims requested by him.  This contention is not supported by the record.

Petitioner has attached copies of letters he sent to his appellate counsel during the pendency of the direct appeal as exhibits to his "Memorandum In Support Of Petition."  (*See* Doc. 1, Memorandum In Support Of Petition, Exs. D-H).  In a letter dated July 30, 2005, however, petitioner merely requested that an appeal be made of the "decision to sentence me to the maximum of the plea bargain range, on the grounds that it is excessive and insupportable." (*Id.,* Ex. D).  Although petitioner sent a letter dated October 22, 2005 to counsel detailing extensive corrections to be made to the appellate brief and asking why counsel had declined "to make my excessive sentence one of the appeal issues," it was only after counsel filed the brief on

December 1, 2005, that petitioner mentioned for the first time in another letter dated December 19, 2005 that he would like the brief amended to reflect that the court "erred in sentencing a first-time offender to the maximum for the abduction charge, and . . . relied on arguments to justify consecutive sentences (as opposed to concurrent) that are unproven or false." (*See id.,* Exs. G, H).

In any event, even assuming, as petitioner contends, that petitioner requested counsel to challenge his sentence based on *Blakely/Booker*, appellate counsel is not constitutionally ineffective merely because he declines to raise a non-frivolous issue on appeal that was requested by the defendant. *Sharp v. Puckett,* 930 F.2d 450, 452 (5th Cir. 1991) (citing *Jones v. Barnes,* 463 U.S. 745, 751 (1983) (holding that an "indigent defendant [does not have] a constitutional right to compel appointed counsel to press nonfrivolous points [on appeal] requested by the client")); *see also Johnico v. Chrones,* 187 Fed.Appx. 701, 703 (9th Cir. June 9, 2006) (not published in Federal Reporter) ("Appellate counsel has no duty to raise every single issue requested by a defendant."), *cert. denied,* 127 S.Ct. 593 (2006). As the Supreme Court stated in *Barnes,* 463 U.S. at 754:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

"Th[e] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (quoting *Barnes*, 463 U.S. at 751-52); *see also Coleman v. Mitchell,* 268 F.3d 417, 430-31 (6th Cir. 2001), *cert. denied,* 535 U.S. 1031 (2002). It is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim on direct appeal; however, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins,* 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)); *see also Wilson v. Hurley,* 108 Fed.Appx. 375, 379 (6th Cir. Aug. 30, 2004) (not published in Federal Reporter), *cert. denied,* 543 U.S. 1160 (2005).

Here, petitioner entered his guilty plea in May 2005 and was sentenced in July

2005 *after Blakely* and *Booker* were decided.[5]  The Supreme Court of Ohio had not yet issued its decision in *State v. Foster,* 845 N.E.2d 470 (Ohio 2006), wherein certain portions of Ohio's sentencing statute were held to be unconstitutional in light of *Blakely.*  However, by the time petitioner entered his guilty plea in this case, the Ohio Court of Appeals, First Appellate District, had decided *Montgomery.*

Ohio's First District Court of Appeals, which decided petitioner's appeal, was one of the few state appellate courts to recognize pre-*Foster* the applicability of *Blakely* to some of the provisions contained in Ohio's sentencing statutes.  *See Foster,* 845 N.E.2d at 488 n.78 (citing *Montgomery* and *State v. Bruce,* 824 N.E.2d 609 (Ohio Ct. App. 1 Dist. 2005)).[6]  Although that court had held in an initial series of cases decided immediately after *Blakely* and prior to *Booker* that "*Blakely* does not affect Ohio's sentencing schemes," after the Supreme Court's *Booker* decision came out in January 2005, it "reevaluated [its] previous decisions and . . . determined that the

_____

[5]  Prior to *Blakely,* the only Sixth Amendment limit recognized by the Supreme Court on the sentencing court's discretion was that a defendant was entitled to a jury determination that he was guilty beyond a reasonable doubt of any fact, other than the fact of a prior conviction, which increased the penalty for the crime established by the jury's verdict beyond the prescribed statutory maximum.  *See Apprendi v. New Jersey,* 530 U.S. 466, 485-87 & n.13, 490 (2000).  In *Blakely*, the Supreme Court extended *Apprendi* to the guilty plea context where, pursuant to a plea agreement, the state had recommended a sentence within the standard range of 49 to 53 months.  *Blakely,* 542 U.S. at 300.  The trial judge rejected the recommended sentence and instead imposed a sentence of 90 months based upon his own finding, by a preponderance of the evidence, that the defendant had acted with "deliberate cruelty."  *Id.* at 302-04.  The Supreme Court reversed the defendant's sentence after finding the trial judge had enhanced the defendant's sentence beyond the statutory maximum based upon facts neither admitted to by the defendant nor found by the jury.  *Id.* at 303.  In so ruling, the *Blakely* Court clarified that "the 'statutory maximum' . . . is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.*  In *Booker,* the Supreme Court extended the reasoning of *Blakely* even further to the federal sentencing guidelines; the Court held that the Sixth Amendment as construed in *Blakely* applied to the guidelines and thus any fact (other than a prior conviction) that increases a federal criminal defendant's sentence beyond the statutory maximum must be presented to a jury and proved beyond a reasonable doubt.  *See Booker*, 543 U.S. at 244.

[6]  The Ohio Supreme Court later affirmed in part and reversed in part the *Bruce* and *Montgomery* appellate court decisions based on *Foster.  See In re Ohio Criminal Sentencing Statutes Cases,* 847 N.E.2d 1174, 1180 (Ohio 2006).

Sixth Amendment does have a bearing on some of Ohio's sentencing statutes."
*Montgomery*, 825 N.E.2d at 251-52 & n.5.

Specifically, in *Montgomery* and other cases decided after *Booker* but before
*Foster,* the First District Court of Appeals held in accordance with *Foster,* 845 N.E.2d
at 489-90, that the sentencing statutes governing the imposition of maximum
sentences and non-minimum sentences for first time offenders, Ohio Rev. Code §
2929.14(B)-(C), were unconstitutional under *Blakely* to the extent the sentencing
judge was required to make additional findings before those sentences could be
imposed–*i.e.*, that the defendant committed one of the worst forms of the offense for a
maximum prison term, and that the shortest prison term would demean the seriousness
of the offender's conduct or would not adequately protect the public for a non-
minimum prison term for a first time offender. *See Montgomery,* 825 N.E.2d at 252-
53 (citing *Bruce*); *see also State v. Banks,* Nos. C-040437, C-040503, 2005 WL
1414428, at *1 (Ohio Ct. App. 1 Dist. June 17, 2005) (unpublished), *appeal
dismissed,* 836 N.E.2d 1229 (Ohio 2005).

Although the *Foster* court also held that the statutory provision governing the
imposition of consecutive sentences, Ohio Rev. Code § 2929.14(E), was *Blakely*-
offending, *Foster,* 845 N.E.2d at 490-91, the First District Court of Appeals upheld
that portion of the sentencing statute as constitutional in the pre-*Foster* cases that
followed *Booker. See Montgomery,* 825 N.E.2d at 255; *see also State v. McIntosh,*
828 N.E.2d 138, 142 (Ohio Ct. App. 1 Dist. 2005). In so ruling, the court reasoned:

> The United States Supreme Court, to date, has not applied this rule to the
> imposition of aggregate sentences. *Apprendi, Blakely,* and *Booker*
> concerned only the limits of punishment for one specific crime. They did
> not address whether the sentences for multiple, but separate, crimes
> should be served concurrently or consecutively. To apply *Blakely* to the
> imposition of consecutive sentences would be to unnecessarily expand
> the Sixth Amendment jurisprudence articulated by the Supreme Court.
> Further, federal courts have consistently held that the imposition of
> consecutive sentences does not violate the Sixth Amendment if the
> individual sentence for each count does not exceed the statutory
> maximum for the corresponding offense.

*Montgomery,* 825 N.E.2d at 255 (footnote omitted). In *Montgomery,* the court further
noted that other "Ohio courts have held the same." *Id.* & n.27 (and numerous Ohio

15

appellate cases cited therein).

Based on its holdings regarding the applicability of *Blakely* to Ohio's sentencing statutes, the court of appeals in *Montgomery* upheld the portion of the trial court's order making the defendant's sentence for drug trafficking consecutive to a sentence separately imposed for a community-control violation. *Id.* at 256. However, to remedy the constitutional infirmity stemming from the imposition of a non-minimum 11-month sentence for the fifth-degree trafficking offense, the court modified that portion of the sentence "to a minimum prison term of six months." *Id.*

In this case, petitioner's counsel filed the brief raising the four assignments of error that were considered on direct appeal on December 1, 2005, before *Foster* was decided, but well after the First District Court of Appeals' decision in *Montgomery.* At that point in time, counsel's failure to assert a *Blakely/Booker* claim challenging the imposition of consecutive sentences did not fall outside the wide range of reasonable professional assistance under the first prong of the *Strickland* test. The consensus of the Ohio appellate courts (including the First District Court of Appeals) at that time was that *Blakely* was inapplicable to consecutive sentencing because the "facts found by the court do not increase the maximum penalty for an individual offense." *Foster,* 845 N.E.2d at 491 (quoting *State v. Lett,* 829 N.E.2d 1281, at ¶42 (Ohio Ct. App. 8 Dist. 2005) (en banc)); *see also Montgomery,* 825 N.E.2d at 255 & n.27.

Although in *Foster,* the Supreme Court of Ohio ultimately determined that the sentencing statute governing consecutive sentences was *Blakely*-offending, this Court is obligated under *Strickland,* 466 U.S. at 488, to "eliminate the distorting effects of hindsight" and evaluate petitioner's claim from counsel's perspective at the time the challenged conduct occurred. *See Strickland,* 466 U.S. at 689. Under this standard, petitioner has not met his burden of overcoming the "strong presumption" that his appellate counsel's conduct with respect to the consecutive sentence issue fell within the wide range of reasonable professional assistance in this case.[7]

Petitioner also is unable to prevail on any claim that his counsel was ineffective in failing to challenge the imposition of any maximum or non-minimum sentence in

---

[7] It is noted that petitioner's appeal was still pending when *Foster* was decided on February 27, 2006. However, by that time, the briefing period had long since ended, and the matter remained open only for disposition by the appellate court.

16

this case.  Here, petitioner was properly sentenced to minimum prison terms of three (3) years for the aggravated burglary and kidnapping offenses.  (*See* Doc. 10, Exs. 4, 7).  The maximum term of imprisonment of five (5) years was imposed for the abduction offense.  However, that sentence was to be served concurrently with the consecutive three-year prison terms for burglary and kidnapping.  As discussed above, petitioner's counsel did not act unreasonably in failing to challenge the imposition of consecutive sentences under *Blakely* when he filed the appellate brief in December 2005.[8]

The undersigned assumes, without deciding, that counsel erred in failing to challenge the maximum sentence imposed for the abduction offense in light of the First District Court of Appeals' decision in *Montgomery*.  However, because the maximum five-year prison term was to be served concurrently with the aggregate six-year sentence imposed for the other two offenses, no prejudice resulted from that alleged sentencing error.  Therefore, in the absence of prejudicial error in this case, petitioner is unable to demonstrate under the second prong of the *Strickland* test that the result of the appeal would "reasonably likely have been different" if counsel had raised a claim on direct appeal challenging the imposition of the five-year maximum sentence for the abduction offense under *Blakely, Booker,* and *Montgomery*.  *See Strickland,* 466 U.S. at 694-95.

Accordingly, in sum, petitioner is not entitled to habeas relief based on the *Blakely/Booker* claims alleged in Grounds One and Two of the petition, which are barred from review due to his procedural default in failing to fairly present the claims to the Ohio Court of Appeals on direct appeal.  Petitioner has not demonstrated a fundamental miscarriage of justice will occur if the claims are not considered herein. Petitioner also has not established, as alleged in Ground Three of the petition, that his appellate counsel's failure to assert the *Blakely*/*Booker* claims on direct appeal amounted to ineffective assistance under the Sixth Amendment and thus constituted "cause" for his procedural default in the state courts.  Finally, petitioner is not entitled to habeas relief based on appellate counsel's failure to raise the *Blakely/Booker* claims to the extent such claim is alleged as a separate ground for relief in Ground Three of the petition.

---

[8]  It is noted that counsel did challenge the consecutive sentences by claiming as an assignment of error on direct appeal that the offenses constituted "allied offenses of similar import."  (*See* Doc. 10, Ex. 9).

17

### B. Petitioner Is Not Entitled To Relief Based On The Remaining Ineffective Assistance Of Appellate Counsel Claims Alleged In Ground Three

In Ground Three of the petition, petitioner additionally alleges that his appellate counsel was ineffective in failing "to respond to letters and the associated concerns of client;" failing "to help client with motions that counsel had neglected to file;" reneging "on a promise to raise appeal issues requested by client;" failing "to challenge numerous instances of trial court violations;" failing "to utilize appropriate arguments for ineffective *trial* counsel issues;" raising "inappropriate issues which had no chance of success;" failing "to properly educate himself on the relevant case particulars;" failing "to properly educate himself on how to apply the law;" and violating "Ohio's Code of Professional Responsibility numerous times." (Doc. 1, pp. 10-11) (emphasis in original).

The only evidence that petitioner has submitted in support of these conclusory allegations is a series of letters between himself and his appellate counsel during the pendency of the direct appeal. In the first letter dated July 30, 2005, petitioner requested counsel to file three appeals challenging the denial at sentencing of his motions for withdrawal of his guilty plea and for a remedy for ineffective assistance of counsel, as well as the imposition of the maximum sentence permitted under the terms of the plea agreement as "excessive and insupportable." (Doc. 1, Memorandum In Support Of Petition, Ex. D).[9]

Apparently, counsel responded to petitioner by letter dated August 11, 2005, informing petitioner there would be "just one appeal" and indicating that if petitioner were successful on a claim challenging the denial of his motion to withdraw his guilty plea, the other two appeal claims would be "unnecessary." (*See id.,* Ex. E). Petitioner replied by letter dated August 15, 2005, stating that he "still want[ed] to appeal what I feel was an excessive sentence imposed by the judge, as a backup" based on the "14 points listed in my last letter." (*Id.*). Petitioner's appellate counsel responded by letter dated August 18, 2005, stating that he would be handling the entire appeal and clarifying that "[t]here will be only one appeal, with several issues

---

[9] Although not in the record before this Court, two pages were apparently enclosed with the letter listing "some points" on the proposed "excessive sentence" claim, which petitioner stated was the issue of "primary concern" to him. (Doc. 1, Memorandum In Support Of Petition, Ex. D).

*inside* that appeal," which "I won't know until I get the transcripts." (*Id.,* Ex. F).

It appears from the record that sometime prior to October 22, 2005, counsel sent petitioner a copy of the appellate brief he planned to file on petitioner's behalf. Petitioner responded by letter dated October 22, 2005, detailing numerous "errors" in the brief that needed correction. (*Id.,* Ex. G). In addition, petitioner expressed concern that counsel had not responded to "all the issues that were raised in my previous letters, particularly the matter of your decision to decline to make my excessive sentence one of the appeal issues." (*Id.*).

It appears from the record that counsel made at least some of the corrections noted by petitioner in the October 22, 2005 letter before filing the appellate brief with the Ohio Court of Appeals on December 1, 2005. (*See* Doc. 10, Ex. 9). In a subsequent letter dated December 19, 2005, petitioner asked counsel to file an amendment to the appeal brief "to address the issue of the excessive sentence," which he had previously specified was his "top priority." (Doc. 1, Memorandum In Support Of Petition, Ex. H). Counsel responded by letter dated December 21, 2005, informing petitioner that if he wished "to file a supplemental brief yourself, please feel free to do so." (*Id.*, Ex. I). Counsel pointed out that he had raised four good-faith arguments on appeal and that "sentencing concerns" were addressed in the fourth assignment of error. (*Id.*).

Upon review of the correspondence between petitioner and his appellate attorney, the undersigned concludes that petitioner has not demonstrated that counsel was ineffective in his representation of petitioner on direct appeal.

First, there is simply no evidence in the record even remotely supporting petitioner's allegation that counsel reneged "on a promise to raise appeal issues requested by [his] client." Indeed, contrary to this contention, it appears that counsel informed petitioner early on that he would not decide the issues to be raised on appeal until after he reviewed the transcripts from the trial proceedings.

In any event, it appears that counsel did raise two of the three claims requested by petitioner to the extent assignments of error were presented challenging the denial of petitioner's motion to withdraw his guilty plea and alleging ineffective assistance of trial counsel. (*See* Doc. 10, Ex. 9). The only claim that petitioner indicated had not been raised on appeal as requested by him concerned his "excessive sentence." However, as discussed above in addressing petitioner's first two grounds for relief, *see*

*supra* p. 13, counsel was not constitutionally required to argue the excessive sentence claim pressed by petitioner in a number of his letters.  *See Barnes,* 463 U.S. at 751-52, 754; *see also Sharp,* 930 F.2d at 452; *Johnico,* 187 Fed.Appx. at 703.  Nor was counsel constitutionally ineffective in failing to challenge the sentence imposed in this case on the basis of *Blakely, Booker* and *Montgomery* in the brief that was filed on December 1, 2005.  *See supra* pp. 13-17.

Furthermore, petitioner has not demonstrated that any other "excessive sentence" claim would have been stronger than the ones presented by counsel on direct appeal.  Contrary to petitioner's contention, the six-year sentence imposed in this case, which was within the range set by the parties' plea agreement, was not "excessive or insupportable."  Indeed, if the parties had not reached an agreement that six years was the maximum sentence that could be imposed for the aggravated burglary, kidnapping, and abduction offenses, petitioner faced a significantly more severe sentence of up to 25 years in prison.  Moreover, upon review of the transcript of the sentencing hearing (*see* Doc. 10, Ex. 34), the undersigned finds there is no evidence in the record even remotely suggesting that the trial court's decision was "insupportable."  Indeed, contrary to petitioner's allegation, it appears that the court's decision, made after a thoughtful and thorough review of "a voluminous amount of information" contained in the pre-sentence investigation report, victim impact statements, and letters written on petitioner's behalf, was reasonable.  (*See id.,* Tr. 70-78).

Finally, to the extent petitioner alleges that his appellate counsel was ineffective with respect to matters other than the "excessive sentence" issue, petitioner has not persuaded the undersigned that any of these remaining allegations of ineffectiveness on the part of his appellate counsel have any merit.

Accordingly, in sum, petitioner is not entitled to habeas relief based on his remaining ineffective assistance of appellate counsel claims alleged in Ground Three of the petition, which are devoid of merit.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2.  A certificate of appealability should not issue with respect to petitioner's claims alleged in Grounds One and Two of the petition, which this Court has concluded are barred from review on procedural waiver grounds, because "jurists of reason would not find it debatable as to whether this Court is correct in its procedural ruling" under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000).[10]  Moreover, a certificate of appealability should not issue with respect to the ineffective assistance of appellate counsel claims alleged in Ground Three of the petition, because they neither state a "viable claim of the denial of a constitutional right" nor are  "adequate to deserve encouragement to proceed further."  *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  8/28/08                      s/Timothy S. Black

      cbc                      Timothy S. Black
                               United States Magistrate Judge

J:\BRYANCC\2008 habeas orders\07-528denypet.waiv-OhCtApp-blakely--iaac.wpd

---

[10]  Because this Court finds that the first prong of the *Slack* standard has not been met, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in his waived claims for relief.  *See Slack,* 529 U.S. at 484.

21

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

_____

Richard Ellison,
      Petitioner,

                                Case No. 1:07cv528
        v.                         (Dlott, J.; Black, M.J.)

Warden, London Correctional
Institution,
      Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).